UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES MONTGOMERY
ARMSTRONG, III ,

    Plaintiff,

v().                                 Case No.:  6:22-cv-486-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Charles Montgomery Armstrong III seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a Reply. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.  Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on September 20, 2014, alleging disability beginning May 17, 2013. (Tr. 275, 638-42). Plaintiff later amended the onset date to March 14, 2015. (Tr. 49, 130). The application was denied initially and on reconsideration. (Tr. 275, 288). Plaintiff requested a hearing and on July 18, 2017, a hearing was held before Administrative Law Judge Stephen Calvarese. (Tr. 209-260). On July 26, 2017, Administrative Law Judge Calvarese entered a decision finding Plaintiff had not been under a disability from May 17, 2013, through December 31, 2016, the date last insured. (Tr. 294-303). Plaintiff requested review of the decision, and the Appeals Council remanded the case to the administrative law judge for further proceedings. (Tr. 311-13).

On remand, Administrative Law Judge Calvarese held a second hearing. (Tr. 168-206) and issued a second decision on April 15, 2019, finding Plaintiff not under a disability from May 17, 2013, through December 31, 2016. (Tr. 318-26). Plaintiff requested review of the second decision and the Appeals Council remanded this decision to an administrative law judge for further proceedings. (Tr. 335-36).

On remand, the claim was assigned to Administrative Law Judge Bernard Porter ("ALJ") who held a hearing on September 9, 2020 (Tr. 124-67), and entered a decision on October 23, 2020, finding Plaintiff not under a disability from March 14, 2015, the amended alleged onset date, through December 31, 2016, the date last

insured. (Tr. 341-59). Plaintiff requested review of the third decision and the Appeals Council remanded this decision to an administrative law judge to consider a longer time period. (Tr. 370-71). In the third decision, the ALJ considered the period from the alleged onset date of March 14, 2015 through the date last insured of December 31, 2016. (Tr. 370-71). The Appeals Council determined that because Plaintiff was a government employee, he was also covered for Hospital Insurance Benefits (Medicare Part A) from April 1, 2005 through December 31, 2017, under the Medicare Qualified Government Employment ("MQGE"), section 226 of the Social Security Act. (Tr. 370). "The requirements and application process for Medicare insurance for these disabled individuals are the same as for individuals who are entitled to disability benefits under Title II of the Act. Evaluation of the claimant's claim for Hospital Insurance (Medicare Part A) for the period from January 1, 2017 through December 31, 2017 is necessary." (Tr. 370). Thus, the Appeals Council remanded the action for the ALJ to offer Plaintiff the opportunity for a hearing, take any further action to complete the administrative record, and issue a new decision. (Tr. 370-71).

On remand, the ALJ held another hearing on August 4, 2021, focusing on the period from December 2016 through December 2017. (Tr. 57, 44-78). On August 31, 2021, the ALJ entered a decision, finding Plaintiff not disabled from March 14, 2015, the alleged onset date, through December 31, 2017, the last date of his Hospital

Insurance Benefits eligibility. (Tr. 33). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on January 12, 2022. (Tr. 2-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on March 8, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 17).

### D.   Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 18). The ALJ further found Plaintiff had through December 31, 2017, to establish his eligibility for Hospital Insurance (Medicare Part A). (Tr. 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of March 14, 2015, through the date of his last insured status (December 31, 2016) or through the date to establish Hospital Insurance Benefits (December 31, 2017). (Tr. 18). At step two, the ALJ found through December 31, 2017, Plaintiff had the following severe impairments: "cervicalgia, lumbar disc disease, thoracic disc disease, carpal tunnel syndrome, hypertension, depressive disorder, anxiety disorder, renal insufficiency." (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 17).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through December 31, 2017, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can lift/carry up to 20 pounds occasionally and up to 10 pounds frequently; sit, stand, and/or walk up to 6 hours in an 8-hour workday; push/pull as much as lift/carry; occasional use of hand controls; no more than frequent overhead reaching; frequent handling, fingering, and feeling; occasional climbing ramps/stairs; no climbing ladders or scaffolds; frequent balancing stooping and crouching; occasional kneeling, no crawling; the claimant is limited to simple tasks with simple work related decisions; with no more than frequent interaction with supervisors, coworkers, and the general public; time off tasks can be accommodated with normal breaks. Additionally, he needs a sit or stand option that allows for a change of position at least every 30 minutes which is a brief positional lasting no more than 3 minutes at a time where the claimant remains at the workstation during the positional change.

(Tr. 21).

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a janitor and cabinet maker. (Tr. 32). At step five, the ALJ found that considering Plaintiff's age (52 on December 31, 2017), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 32). The

vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

    (1)   office helper, DOT 239.567-010,[1] light, SVP 2

    (2)   merchandise marker, DOT 209.587-034, light, SVP 2

    (3)   small products assembler, DOT 706.684-022, light, SVP 2

(Tr. 33). The ALJ concluded that Plaintiff had not been under a disability from March 14, 2015, the alleged onset date, through December 31, 2017, the last date of his Hospital Insurance Benefits eligibility. (Tr. 33).

## II. Analysis

On appeal, Plaintiff argues that the RFC determination was unsupported by substantial evidence because the ALJ failed to properly weigh the opinions of treating physician Dr. Monette. (Doc. 21, p. 11). In the decision, the ALJ afforded little weight to Daniel Monette, M.D's opinions. (Tr. 31). Plaintiff claims that the ALJ did not provide sufficient reasons to discount these opinions. (Doc. 21, p. 14-18).

At step four, an ALJ must properly consider treating, examining, and non-examining physician's opinions and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

opinion concerning the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's

specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

Dr. Monette treated Plaintiff from 2012 through at least June 2021. (Tr. 1460, 1798). He provided four treating source statements, three for physical conditions and one for psychological conditions, to all of which the ALJ afforded little weight. (Tr. 30, 31, 1460-63, 1552-55, 1620-24, 1795-98).

### A. Ability to Lift, Carry, Push, and Pull

Plaintiff first challenges the ALJ's finding that Dr. Monette's opinions were inconsistent with his treatment records related to Plaintiff's ability to lift, carry, push, and pull. (Doc. 21, p. 13-15). In Dr. Monette's March 2019, July 2020, and June 2021 Treating Source Statements, he found Plaintiff could lift and carry less than 10 pounds, and push and pull rarely. (Tr. 1461, 1462, 1553, 1564, 1796, 1797). Citing multiple treatment records from Dr. Monette, the ALJ found these limitations inconsistent with Dr. Monette's treatment records that found Plaintiff had intact strength and a lack of neurological deficits despite diffuse disc bulging in the cervical spine. (Tr. 30).

Plaintiff argues that the ALJ focused on a few select unremarkable findings to try to show Dr. Monette's opinions were unsupported. (Doc. 21, p. 14). Plaintiff points to other findings by Dr Monette during the same period, such as Plaintiff's paralumbar tenderness, cervical tenderness across the paraspinal muscles,

tenderness of the upper trapezius, tenderness across the lower paraspinal muscles, and tenderness of the cervical spine with neck flexion, extension, and side-to-side rotation. (Doc. 21, p. 14). Plaintiff also argues that the ALJ "cherry-picked findings in order to create the impression that Dr. Monette's findings did not support his opinion, yet Dr. Monette made that opinion in spite of these few unremarkable findings." (Doc. 21, p. 14).

In the decision, the ALJ thoroughly summarized Dr. Monette's treatment records. (Tr. 24-27, 30-31). The ALJ noted that Plaintiff had tenderness and tightness of the thoracolumbar spine and limited range of motion of the spine, but also noted that Plaintiff's straight leg raising was negative, his reflexes and sensations remained intact, and he had no focal motor deficit or weakness. (Tr. 24). The ALJ recognized Plaintiff reported neck pain with radiculopathy bilaterally in the hands, but found the evidence inconsistent with the severity and frequency of these symptoms. (Tr. 24). The ALJ also noted Plaintiff had tenderness across the cervical paraspinous muscles, tenderness into the upper trapezius muscles, pain with range of motion of the neck with limited rotation, but Spurling's was negative and Plaintiff maintained full strength in the upper extremities with intact sensation. (Tr. 25). The ALJ further found that Plaintiff reported significant improvement with physical therapy for neck stiffness. (Tr. 25). After review of the evidence related to Plaintiff's spine disorders,

the ALJ concluded that Plaintiff retained the capacity to work during the relevant period. (Tr. 25).

Overall, the ALJ considered the examination results in Dr. Monette's treatment records, including the results that supported Dr. Monette's opinions and those that did not. The ALJ did not simply "cherry-pick" the evidence that supported the RFC, but instead considered and weighed all of this evidence to reach the RFC assessment. Substantial evidence supports the ALJ's RFC findings on lifting, carrying, pushing, and pulling.

Moreover, Plaintiff must do more than point to evidence in the record that supports his allegations. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). He must show the absence of substantial evidence supporting the ALJ's conclusion. *Id.* Here, substantial evidence supports the ALJ's consideration of Dr, Monette's opinions, the RFC, and the hypothetical posed to the vocational expert. Further, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Thus, remand is not warranted on this issue.

### B. Being Off Task

Plaintiff next claims that the ALJ's reasons not to credit Dr. Monett's findings that Plaintiff would be off task for twenty-five percent of a typical workday were unsupported. (Doc. 21, p. 15-18). In Dr. Monette's March 2019, July 2020, and June 2021 Treating Source Statements, he found Plaintiff would likely be off task twenty-five percent of a typical workday. ((Tr. 1460, 1552, 1624, 1795). The ALJ found being off task twenty-five percent of a workday was inconsistent with Dr. Monette's treatment notes that showed Plaintiff was in no obvious distress, alert, oriented, and, even when his treatment records showed tenderness, there were no neurological deficits. (Tr. 30). The ALJ also found that being off task twenty-five percent of a workday was inconsistent with the treatment notes from Plaintiff's pain management provider who stated that Plaintiff was in no acute distress, alert, and oriented. (Tr. 30).

In addition, the ALJ separately discussed Dr Monette's August 2020 Treating Source Statement – Psychological Conditions. (Tr 31). In this Statement, Dr. Monette also found Plaintiff would be off task twenty-five percent of a typical workday. (Tr. 1624). The ALJ afforded little weight to this opinion, reasoning that it was internally inconsistent and lacked support from his treatment records. (Tr. 31). The ALJ specifically pointed to Dr. Monette's findings that Plaintiff had no limitations in his ability to understand, remember, or apply information, ability to

interact with others, ability to concentrate, persist, or maintain pace, ability to adapt or manage oneself, and understanding and memory. (Tr. 31, 1622-23). Yet, as the ALJ noted, later in this Statement, Dr. Monette found that Plaintiff was unable to work with the general public, co-workers, and supervisors. (Tr. 31, 1622). As the ALJ found, these limitations are inconsistent with Dr. Monette's prior finding of no limitations in the ability to interact with others. (Tr. 31).

The ALJ similarly found that Dr. Monette's opinion that Plaintiff had no limitations in concentrating, persisting, or maintain pace and in sustaining concentration and persistence for more than two hours without requiring a break directly conflicted with his finding that Plaintiff would be off task twenty-five percent of a workday due to deficits in attention and concentration. (Tr. 31, 1622-244). The ALJ also found that Dr. Monette did not explain these conflicts and did not identify any symptoms that would cause such limitations. (Tr. 31). The ALJ further noted that being off task twenty-five percent of a workday was inconsistent with Dr. Monette's exams that showed Plaintiff was in no obvious distress, alert, and oriented, or with treatment notes from his mental health provider that showed his thought process was goal directed and his attention and concentration were adequate. (Tr. 31).

Plaintiff argues that the ALJ claimed Dr. Monette's opinion was inconsistent but failed to explain how. (Doc. 21, p. 15). Plaintiff also argues that even though Dr.

Monette found Plaintiff could maintain concentration for more than two hours at a time, "this does not necessarily mean he can keep this up throughout the entire workday." (Doc. 21, p. 15). Plaintiff's arguments fail. First, Plaintiff merely speculates that even though Dr. Monette found Plaintiff could concentrate for more than two hours at a time, he may be unable to concentrate for an eight-hour workday. Second, Plaintiff ignores the direct inconsistency between Dr. Monette's finding that Plaintiff had no limitations in his ability to concentrate, persist, or maintain pace and Dr. Monette's finding that Plaintiff would be off task twenty-five percent in a workday. Third, while Plaintiff cites to other treating sources who found similar diagnoses to Dr. Monette's, Plaintiff cites no opinions from these treating sources that support Dr. Monette's limitation to being off task twenty-five percent of a workday. (Doc. 21, p. 17-18).

Plaintiff then argues that the ALJ should have recontacted Dr. Monette to have him explain any inconsistencies in his opinion. (Doc. 21, p. 16). Under the regulations, if evidence in the record is inconsistent, then the ALJ will consider the relevant evidence "and see if we can determine whether you are disabled based on the evidence we have." 20 C.F.R. § 404.1520b(b)(1)-(3). In his discretion, an ALJ may recontact a medical source to seek clarification, but is not required to do so. *Id.* The ALJ had sufficient evidence in the record, including Dr. Monette's treatment records as well as records from other treating and non-treating sources and Plaintiff's

testimony to determine Plaintiff's impairments, his RFC, and his ability to work. The ALJ properly determined that Dr. Monette's opinions were internally inconsistent and inconsistent with his treatment records. Thus, the ALJ provided good cause to afford little weight to Dr. Monette's opinion and substantial evidence supports the ALJ's decision.

Lastly, Plaintiff argues that had the ALJ properly evaluated Dr. Monette's opinions, he would have found Plaintiff incapable of work because the vocational expert testified that employers would not tolerate an employee being off task more than seven percent of the time. (Doc. 21, p. 19). For a vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But an ALJ need not include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). Here, the ALJ included all of the findings supported by the record in the hypothetical to the vocational expert and substantial evidence supports the ALJ's decision as a whole.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 8, 2023.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties